UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

CIVIL ACTION NO.

CONSTANCE B. STEADMAN, MICHAEL J. STEADMAN,
    *Plaintiffs*,

v.

SUSANA M. CAMPOS, M.D, LISA, B. ARVINE, N.P, PATRICIA NUTTING, RN/N P-C, GUNJAN M. SENAPATI, M.D, and JOHN/JANE DOE
    *Defendants*.

# COMPLAINT AND DEMAND FOR JURY TRIAL

## JURISDICTION

1. Jurisdiction is conferred by 28 United States Code 1332, as the parties herein are of diverse citizenship (New Hampshire plaintiffs and Massachusetts defendants) and the amount in controversy exceeds $75,000.00, exclusive of interest and costs. Venue resides in the Eastern Division of the United States District Court, District of Massachusetts.

2. Massachusetts General Laws c. 231, §60L requiring 180 day written notice to the healthcare provider before the action is filed in court is inapplicable to this case as the statute of limitations was set to expire within six months of the filing of this action.

## PARTIES

3. Plaintiff, Constance B. Steadman (hereinafter "Mrs. Steadman" or "Constance Steadman") was, at all relevant times hereto, an adult with a usual place of residence

1

at Rockingham County, State of New Hampshire. Constance Steadman is the wife of Michael J. Steadman.

4. Plaintiff, Michael J. Steadman, (hereinafter "Mr. Steadman" or "Michael J. Steadman") is the husband of Constance B. Steadman, and resides with in Rockingham County, State of New Hampshire.

5. Defendant Susana Maria Campos, M.D., MHP., (hereinafter "Campos"), at all relevant times hereto, was a physician licensed in the Commonwealth of Massachusetts and practicing medicine as an oncologist at Dana Farber Cancer Institute in Boston, Suffolk County, Massachusetts and resides in Suffolk County, Commonwealth of Massachusetts.

6. Defendant Lisa, B. Arvine, N.P., (hereinafter "Arvine"), at all relevant times hereto, was a licensed nurse practitioner in the Commonwealth of Massachusetts and practicing medicine as a nurse practitioner at Dana Farber Cancer Institute in Boston, Suffolk County, Massachusetts and resides in Suffolk County, Commonwealth of Massachusetts.

7. Defendant Patricia Nutting, RN/NP-C, (hereinafter "Nutting"), at all relevant times hereto, was a licensed nurse practitioner in the Commonwealth of Massachusetts and practicing medicine as a nurse practitioner at Dana Farber Cancer Institute in Boston, Suffolk County, Massachusetts and resides in Suffolk County, Commonwealth of Massachusetts.

8. Defendant Gurjan M. Senapati. M.D, (hereinafter "Senapati"), at all relevant times hereto, was a physician licensed in the Commonwealth of Massachusetts and practicing medicine as a radiologist at Dana Farber Cancer Institute in Boston,

Suffolk County, Massachusetts and, on information and belief, resides in Middlesex County, Commonwealth of Massachusetts.

9. Upon information and belief, Defendant Jane/John Doe was a medical provider who provided medical and/or radiological care to Mrs. Steadman from 2013 through the present.

## FACTS

10. Constance Steadman is a 62-year-old woman with a history of breast cancer which was diagnosed in 2003.

11. In 2004, Ms. Steadman underwent a right skin sparing mastectomy with immediate TRAM flap reconstruction; pathology revealed 0.9 cm of moderately differentiated invasive carcinoma with combined ductal and lobular features, not at the margin. There was also a minor component of associated low grade DCIS, not at the margin, There was no evidence of malignancy in the right chest was skin. No lymphatic invasion was seen. ER 3+, PR3+, HER2 negative, E-cadherin: invasive tumor negative.

12. The stage of Mrs. Steadman's breast cancer was reported as stage T1 N0 M0.

13. Ms. Steadman began tamoxifen treatment in April 2004 and took this for 5 years through April 2009.

14. On 10/24/05, Ms. Steadman underwent a left breast biopsy that revealed benign breast tissue.

15. On 2/26/07, Ms. Steadman underwent a left breast wire localized excisional biopsy that revealed benign breast tissue with sclerosing adenosis and a 0.1 cm fibroadenoma with calcifications and benign breast tissue. There was no evidence of malignancy.

16. In August 2011, Ms. Steadman noted a small pea-sized nodule at 3:00 in the reconstructed right breast.

17. On or before August 29, 2011 and thereafter Mrs. Steadman formed a patient-medical care provider relationship with Susana M. Campos, M.D.

18. Ms. Steadman underwent a bilateral breast MRI on 8/29/11 that revealed a 1 cm area of enhancement 1-2 cm from the skin at 3:00 in the medial right breast. The care provider at that visit (upon information and belief Dr. Campos) sent Mrs. Steadman home assuring her it was not cancer and that the risk of reoccurring cancer is only 1%.

19. On or before 10/25/11 and thereafter Mrs. Steadman formed a patient-physician relationship with Jack E. Meyer, M.D. ("Dr. Meyer")

20. Mrs. Steadman had a Screening mammogram on 10/25/11 that Dr. Meyer reported as negative.

21. A right breast ultrasound was performed by Dr. Meyer on 11/11/11 and demonstrated a 9 mm focal hyperechoic focus with the appearance of fat necrosis.

22. Mrs. Steadman had Screening mammogram on 10/30/12 which was reported by Dr. Meyer as negative.

23. That same day a repeat right breast ultrasound was performed by Dr. Meyer and reportedly showed a stable subcentimeter hyperechoic focus consistent with fat necrosis. Mrs. Steadman had was told once more that the mass was fat necrosis and that the reoccurring chance of her having cancer again was 1%.

24. On or before 11/15/13 Mrs. Steadman formed a patient-physician relationship with Lisa Arvine, N.P.

25. On 11/15/13 Mrs. Steadman encountered NP Arvine for a follow-up visit. No follow-up on the right sided breast mass was performed.

26. On 11/15/13 Mrs. Steadman underwent a mammogram of the left breast performed and interpreted by Dr. Meyer which was reported as benign.

27. On 11/21/14 and thereafter, Ms. Steadman encountered Dr. Campos for a recheck visit. No follow-up on the right sided breast mass was performed.

28. On 11/21/2014 Mrs. Steadman underwent a mammogram of the left breast as well as an ultrasound of the left breast performed and interpreted by Dr. Meyer as negative.

29. On 5/26/15 Mrs. Steadman had a follow-up visit with Dr. Campos. No follow-up on the right sided breast mass was performed.

30. On 7/1/16 Mrs. Steadman underwent a mammogram of the left breast performed and interpreted by Dr. Catherine S. Giess, M.D. and was reported as negative.

31. On or before 9/19/16 and thereafter Ms. Steadman formed a patient-physician relationship with Dr. Ann H. Partridge, M.D. ("Dr. Partridge") and Dr. Gunjan M. Senapati, M.D. ("Dr. Senapati")

32. On 9/19/16 Mrs. Steadman underwent a right sided mammogram an ultrasound of the right breast performed and interpreted by Gunjan M. Senapati, M.D. which revealed a round hyperechoic mass with indistinct margins measuring 0.9 x 0.7 x 0.6 cm (which is larger than the mass during the 2012 ultrasound). Dr. Senapati classified the assessment as category 3 and recommended a short interval follow-up.

33. On or before 9/19/16 and thereafter Mrs. Steadman developed a patient-nurse practitioner relationship with Patricia Nutting, RN/NP-C.

34. On 9/19/16 Mrs. Steadman encountered NP-C Nutting for a follow-up examination. During that visit NP-C Nutting recommended that Mrs. Steadman return in six (6) months for a follow-up on the palpable 9mm mass in her right breast.

35. On 5/31/17 Mrs. Steadman underwent a follow-up right sided ultrasound performed and resulted by Gunjan M. Senapati, M.D. which revealed a round hyperechoic mass measuring 1.1 x 0.7 x 0.9 cm. Dr. Senapati reported that the mass had the appearance of fat necrosis and recommended ultrasound guided biopsy based on Mrs. Steadman's feeling that the mass had increased in size.

36. On 6/5/17 Mrs. Steadman encountered NP-C Nutting for a follow-up exam. During that exam NP-C Nutting scheduled Mrs. Steadman for 1 year follow-up breast imaging despite at a minimum the radiologist's recommendation for a short-interval follow-up. NP-C Nutting reassured Mrs. Steadman that the risk of reoccurrence of cancer was very low and instructed Mrs. Steadman to call if she wished to go forward with a biopsy of the right breast mass.

37. On 9/11/17, Ms. Steadman underwent a chest CT without IV contrast at Holy Family Hospital that noted stable lung nodules and stable height loss at T5 and at the superior endplate of T11.

38. On 10/19/17, she underwent a bone scan to evaluate right rib pain. There was moderate focal skeletal lesion in the right anterior fifth rib adjacent to the costochondral junction and mild focal skeletal lesion in the right anterior fourth rib just above the fifth rib lesion, suggestive of active focal traumatic changes or fractures. Otherwise bone scan was negative for significant focal skeletal lesion in the rest of the whole body.

39. On 10/27/17 NP Nutting and Dr. Partridge ordered an ultrasound guided biopsy of Mrs. Steadman's right breast mass.

40. On 11/13/17, Ms. Steadman underwent a right breast ultrasound-guided core needle biopsy at Brigham & Women's Hospital.

41. On 11/20/17 pathology reported a well-differentiated ER positive (>95%, strong), PR positive (>95%, strong), HER2 negative (0) invasive ductal carcinoma measuring at least 1.4 cm. There was no lymphovascular invasion seen in the specimen and no in situ carcinoma was present. The result was reported as malignant and oncological treatment was recommended.

42. On 11/20/17 Mrs. Steadman was diagnosed as having a recurrence of her breast cancer.

43. A PET scan was performed on 12/18/17.

44. On or before 1/3/18 Mrs. Steadman formed a patient physician relationship with Dr. Mary Jane Houlihan, M.D. ("Dr. Houlihan").

45. On 1/3/18, Mrs. Steadman underwent a right breast excision at Beth Israel Deaconess Medical Center performed by Dr. Houlihan that was reviewed at MGH. The excised mass was revealed to be 3.5 x 2 x 1.5 cm.

46. MGH review revealed low-grade invasive ductal carcinoma with multiple close margins. There was focal grade 2 DCIS present. Only 2 representative slides were available for review and showed low-grade (grade 1-2) invasive ductal carcinoma with a dispersed and infiltrative pattern of growth. The invasive carcinoma spanned 1.9 cm in maximal dimension on a reviewed slide; it was noted that per report, carcinoma was identified at the medial and lateral aspects of the specimen suggesting

a span of at least 3.5 cm (slides were unavailable for MGH pathology review). Invasive carcinoma was present <0.1 cm from multiple inked margins. Oncotype DX recurrence score was 11.

47. On 2/5/18, Ms. Steadman underwent removal of the right TRAM flap (Dr. Houlihan) with placement of a latissimus dorsi flap with an implant (Dr. Morris); reportedly, there was no residual tumor noted in the right breast. Ms. Constance B Steadman reports that Dr. Houlihan attempted lymph node mapping at the time of surgery but was unsuccessful.

48. Mrs. Steadman met with Dr. Kuter on 4/26/18 for a second opinion on management of recurrent breast cancer.

49. Mrs. Steadman restarted tamoxifen in May 2018.

50. Mrs. Steadman underwent genetic testing in June 2018; there were no clinically significant mutations detected.

51. On 9/19/18, Mrs. Steadman underwent right medial breast skin excision; pathology was reviewed at MGH and demonstrated ER+/PR+/HER2- invasive carcinoma that spanned 0.7 cm infiltrating the dermis. Invasive carcinoma was present at the inked margin along a broad front.

52. On 10/4/18, Mrs. Steadman underwent a bilateral breast MRI and PET scan.

53. On 11/5/18, Mrs. Steadman returned to the OR for an additional right chest wall excision and transection of the right thoracodorsal nerve. Pathology from the nerve transection revealed a segment of the nerve with no diagnostic abnormality. Pathology from the chest wall excision revealed invasive carcinoma present in association with biopsy related changes and overlying scarring and dermis and

subcutis consistent with prior surgical site. The invasive carcinoma was morphologically consistent with a mammary primary and demonstrated ductal and lobular features. The carcinoma was favored to represent 2 foci: on one side the invasive carcinoma spanned 1.6 cm, a discrete 1.5 mm focus of morphologically similar invasive carcinoma was present in the lateral portion of the specimen. Neither lymphovascular invasion nor was identified. The invasive carcinoma was present 1.5 mm from the yellow-inked lateral margin, 1.5 mm from the violet-inked margin, 2 mm from the blue-inked superior margin, and 4 mm from the green-inked inferior margin; the invasive carcinoma was at least 5 mm from all other examined margins. Skin from a lateral dog ear excision was used to do a full thickness skin graft to an area of 3.5 x 6 cm. MGH review of pathology pending.

54. In December 2018 Mrs. Steadman was informed that she should have been given radiation treatment immediately following the January 2018 excision surgery.

55. Thereafter in December 2018, Mrs. Steadman transferred her care to MGH, where it was determined she needed 33 rounds of radiation.

56. The stage of Mrs. Steadman's recurrent breast cancer was reported as stage T1cN0M0.

57. The 33 rounds of radiation took a very long time due to the skin graft on Mrs. Steadman's right breast. The radiation caused severe burning, so the treatment had to be stopped for several weeks for it to heal. The radiation treatments started in January 2019 and ended in March 2020.

58. Mrs. Steadman will require at least one more additional surgery to replace the implant in her right breast.

59. Mrs. Steadman has suffered pain and mental anguish, incapacity, disbelief, and loss of a chance for a cure.

## COUNT I– NEGLIGENCE
## CONSTANCE B. STEADMAN vs. SUSANA M. CAMPOS, M.D.

60. Plaintiffs repeat and incorporate herein the allegations in paragraphs 1 through 59.

61. The defendant, Susana M. Campos, at all material times held herself out to the general public and to the plaintiff, in particular, as being a medical care provider competent to render to her medical care in a non-negligent manner.

62. The defendant owed a duty to the plaintiff to use the care and skill required of the average qualified medical care provider, taking into account the advances in the profession at the time in 2014 and thereafter, and under the circumstances that then existed.

63. From November 21, 2014 and thereafter, defendant Susana M. Campos negligently, carelessly, or unskillfully participated in the treatment of Mrs. Steadman by and among other things:

    a. failing to follow the standard of care and skill of the average qualified members of the profession practicing as a qualified medical care provider, acting in the same or similar circumstances, and taking into account advances in the profession; and

    b. failing to order breast biopsy for the right sided breast mass on Mrs. Steadman;

    c. failing to timely diagnose Mrs. Steadman's recurrent breast cancer; and

    d. failing to order short interval and continued imaging follow-up on Mrs. Steadman's right sided breast mass.

64. As a direct and proximate result of the negligence, carelessness, and lack of skill of defendant Susana M. Campos, there was a delay in diagnosing Mrs. Steadman's

recurrent breast cancer, plaintiff Mrs. Steadman has been caused to lose timely treatment and a chance of cure, her cancer was allowed to advance in stage, she will suffer a worse prognosis than had she been timely diagnosed, has been caused to suffer severe and permanent injuries and damages, including but not limited to:

a. Advancement of her recurrent breast cancer;

b. Deteriorating health;

c. Diminished life expectancy;

d. Physical and emotional pain and distress;

e. Life-long pain and suffering; and loss of the pleasures of having a normal life;

f. Loss of her best chance at cure and/or multiple alternative treatment possibilities, all of which Mrs. Steadman has been and will, for the rest of her life, be deprived of, all as a result of the defendant's negligence; and

g. Continued endurance of medical treatment and incurrence of medical bills.

WHEREFORE, plaintiff Constance B. Steadman demands judgment in her favor against defendant Susana M. Campos, M.D. for monetary damages, plus interest and costs.

## COUNT II– NEGLIGENCE
## CONSTANCE B. STEADMAN vs. LISA B. ARVINE, N.P.

65. Plaintiffs repeat and incorporate herein the allegations in paragraphs 1 through 64.

66. The defendant, Lisa B. Arvine, N.P, at all material times held herself out to the general public and to the plaintiff, in particular, as being a medical care provider competent to render to her medical care in a non-negligent manner.

67. The defendant owed a duty to the plaintiff to use the care and skill required of the average qualified medical care provider, taking into account the advances in the

profession at the time in 2013 and thereafter, and under the circumstances that then existed.

68. From November 15, 2013 and thereafter, defendant Lisa B. Arvine negligently, carelessly, or unskillfully participated in the treatment of Mrs. Steadman by and among other things:

   a. failing to follow the standard of care and skill of the average qualified members of the profession practicing as a qualified medical care provider, acting in the same or similar circumstances, and taking into account advances in the profession; and

   b. failing to order breast biopsy for the right sided breast mass on Mrs. Steadman;

   c. failing to timely diagnose Mrs. Steadman's recurrent breast cancer; and

   d. failing to order short interval and continued imaging follow-up on Mrs. Steadman's right sided breast mass.

69. As a direct and proximate result of the negligence, carelessness, and lack of skill of defendant Lisa B. Arvine, there was a delay in diagnosing Mrs. Steadman's recurrent breast cancer, plaintiff Mrs. Steadman has been caused to lose timely treatment and a chance of cure, suffer a worse prognosis than had she been timely diagnosed, has been caused to suffer severe and permanent injuries and damages, including but not limited to:

   a. Advancement of her recurrent breast cancer;

   b. Deteriorating health;

   c. Diminished life expectancy;

   d. Physical and emotional pain and distress;

   e. Life-long pain and suffering; and loss of the pleasures of having a normal life;

    f. Loss of her best chance at cure and/or multiple alternative treatment possibilities, all of which Mrs. Steadman has been and will, for the rest of her life, be deprived of, all as a result of the defendant's negligence; and

    g. Continued endurance of medical treatment and incurrence of medical bills.

WHEREFORE, plaintiff Constance B. Steadman demands judgment in her favor against defendant Lisa B. Arvine, NP for monetary damages, plus interest and costs.

<u>**COUNT III– NEGLIGENCE**</u>
<u>**CONSTANCE B. STEADMAN vs. PATRICIA R. NUTTING, RN/NP-C**</u>

70. Plaintiffs repeat and incorporate herein the allegations in paragraphs 1 through 69.

71. The defendant, Patricia R. Nutting, RN/NP-C, at all material times held herself out to the general public and to the plaintiff, in particular, as being a medical care provider competent to render to her medical care in a non-negligent manner.

72. The defendant owed a duty to the plaintiff to use the care and skill required of the average qualified medical care provider, taking into account the advances in the profession at the time in 2016 and thereafter, and under the circumstances that then existed.

73. From 9/19/16 and thereafter, defendant Patricia R. Nutting, RN/NP-C, negligently, carelessly, or unskillfully participated in the treatment of Mrs. Steadman by and among other things:

    a. failing to follow the standard of care and skill of the average qualified members of the profession practicing as a qualified medical care provider, acting in the same or similar circumstances, and taking into account advances in the profession; and

    b. failing to order breast biopsy for the right sided breast mass on Mrs. Steadman; and

13

    c.  failing to timely diagnose Mrs. Steadman's recurrent breast cancer; and

74. As a direct and proximate result of the negligence, carelessness, and lack of skill of defendant Patricia R. Nutting, RN/NP-C, there was a delay in diagnosing Mrs. Steadman's recurrent breast cancer, plaintiff Mrs. Steadman has been caused to lose timely treatment and a chance of cure, suffer a worse prognosis than had she been timely diagnosed, has been caused to suffer severe and permanent injuries and damages, including but not limited to:

    h.  Advancement of her recurrent breast cancer;

    i.  Deteriorating health;

    j.  Diminished life expectancy;

    k.  Physical and emotional pain and distress;

    l.  Life-long pain and suffering; and loss of the pleasures of having a normal life;

    m.  Loss of her best chance at cure and/or multiple alternative treatment possibilities, all of which Mrs. Steadman has been and will, for the rest of her life, be deprived of, all as a result of the defendant's negligence; and

    n.  Continued endurance of medical treatment and incurrence of medical bills.

WHEREFORE, plaintiff Constance B. Steadman demands judgment in her favor against defendant Patricia R. Nutting, RN/NP-C, for monetary damages, plus interest and costs.

## COUNT III– NEGLIGENCE
## CONSTANCE B. STEADMAN vs. GUNJAN M. SENAPATI, M.D.

75. Plaintiffs repeat and incorporate herein the allegations in paragraphs 1 through 74.

76. The defendant, Gunjan M. Senapati, M.D., at all material times held himself out to the general public and to the plaintiff, in particular, as being a medical care provider competent to render to her medical care in a non-negligent manner.

77. The defendant owed a duty to the plaintiff to use the care and skill required of the average qualified medical care provider, taking into account the advances in the profession at the time in 2016 and thereafter, and under the circumstances that then existed.

78. From 9/19/16 and thereafter, defendant Dr. Senapati, negligently, carelessly, or unskillfully participated in the treatment of Mrs. Steadman by and among other things:

    a. failing to follow the standard of care and skill of the average qualified members of the profession practicing as a qualified medical care provider, acting in the same or similar circumstances, and taking into account advances in the profession; and

    b. failing to order breast biopsy for the right sided breast mass on Mrs. Steadman; and

    c. failing to timely diagnose Mrs. Steadman's recurrent breast cancer.

79. As a direct and proximate result of the negligence, carelessness, and lack of skill of defendant Senapati, there was a delay in diagnosing Mrs. Steadman's recurrent breast cancer, she has been caused to lose timely treatment and a chance of cure, suffer a worse prognosis than had she been timely diagnosed, has been caused to suffer severe and permanent injuries and damages, including but not limited to:

    o. Advancement of her recurrent breast cancer;

    p. Deteriorating health;

    q. Diminished life expectancy;

    r. Physical and emotional pain and distress;

    s. Life-long pain and suffering; and loss of the pleasures of having a normal life;

   t. Loss of her best chance at cure and/or multiple alternative treatment possibilities, all of which Mrs. Steadman has been and will, for the rest of her life, be deprived of, all as a result of the defendant's negligence; and

   u. Continued endurance of medical treatment and incurrence of medical bills.

WHEREFORE, plaintiff Constance B. Steadman demands judgment in her favor against defendant Gunjan Senapati, M.D., for monetary damages, plus interest and costs.

### COUNT V – LOSS OF CONSORTIUM
### MICHAEL J. STEADMAN vs. LISA B. ARVINE, NP.

80. Plaintiffs repeat and incorporate herein the allegations in paragraphs 1 through 79.

81. As a direct and proximate result of the negligence, carelessness, and lack of skill of defendant Arvine and the consequent injuries and damages to Constance B. Steadman, the wife of Constance B. Steadman, Mr. Steadman has incurred expenses for care and services, has been deprived of the society and companionship of his wife his comfort and happiness have been impaired, and these deprivations and impairments continue.

WHEREFORE, plaintiff Michael J. Steadman demands judgment in his favor and against defendant Lisa B, Arvine N.P, for monetary damages, plus interest and costs.

### COUNT VI – LOSS OF CONSORTIUM
### MICHAEL J. STEADMAN V. SUSANA M. CAMPOS, M.D.

82. Plaintiffs repeat and incorporate herein the allegations in paragraphs 1 through 81.

83. As a direct and proximate result of the negligence, carelessness, and lack of skill of defendant Campos and the consequent injuries and damages to Constance Steadman, the wife of Michael Steadman, Mr. Steadman has incurred expenses for care and

services, has been deprived of the society and companionship of his wife, his comfort and happiness have been impaired, and these deprivations and impairments continue.

WHEREFORE, plaintiff Michael Steadman demands judgment in his favor and against defendant Susana M. Campos, M.D., for monetary damages, plus interest and costs.

## COUNT VII – LOSS OF CONSORTIUM
## MICHAEL J. STEADMAN V. PATRICIA NUTTING, NP-C

84. Plaintiffs repeat and incorporate herein the allegations in paragraphs 1 through 83.

85. As a direct and proximate result of the negligence, carelessness, and lack of skill of defendant Nutting and the consequent injuries and damages to Constance Steadman, the wife of Michael Steadman, Mr. Steadman has incurred expenses for care and services, has been deprived of the society and companionship of his wife, his comfort and happiness have been impaired, and these deprivations and impairments continue.

WHEREFORE, plaintiff Michael Steadman demands judgment in his favor and against defendant Patricia Nutting, NP-C, for monetary damages, plus interest and costs.

## COUNT VIII – LOSS OF CONSORTIUM
## MICHAEL J. STEADMAN V. GUNJAN SENAPATI, M.D.

86. Plaintiffs repeat and incorporate herein the allegations in paragraphs 1 through 86.

87. As a direct and proximate result of the negligence, carelessness, and lack of skill of defendant Senapati and the consequent injuries and damages to Constance Steadman, the wife of Michael Steadman, Mr. Steadman has incurred expenses for care and services, has been deprived of the society and companionship of his wife, his comfort and happiness have been impaired, and these deprivations and impairments continue.

WHEREFORE, plaintiff Michael Steadman demands judgment in his favor and against defendant Gunjan Senapati, M.D., for monetary damages, plus interest and costs.

**COUNT IX -NEGLIGENCE**
**CONSTANCE B. STEADMAN vs. JANE/JOHN DOE**

88. Plaintiffs repeat and incorporate herein the allegations in paragraphs 1 through 87.

89. The defendant, Jane/John Doe, at all material times held herself/himself out to the general public and to the plaintiff, in particular, as being a medical care provider competent to render to her medical care in a non-negligent manner.

90. The defendant owed a duty to the plaintiff to use the care and skill required of the average qualified medical care provider, taking into account the advances in the profession at the time in 2013 and thereafter, and under the circumstances that then existed.

91. From 11/13/13 and thereafter, defendant Jane/John Doe negligently, carelessly, or unskillfully participated in the treatment of Mrs. Steadman by and among other things:

    a. failing to follow the standard of care and skill of the average qualified members of the profession practicing as a qualified medical care provider, acting in the same or similar circumstances, and taking into account advances in the profession; and

    b. failing to order breast biopsy for the right sided breast mass on Mrs. Steadman; and

    c. failing to timely diagnose Mrs. Steadman's recurrent breast cancer; and

92. As a direct and proximate result of the negligence, carelessness, and lack of skill of defendant Jane/John Doe, plaintiff Mrs. Steadman there was a delay in diagnosing Mrs. Steadman's recurrent breast cancer, she has been caused to lose timely treatment and a chance of cure, suffer a worse prognosis than had she been timely diagnosed,

has been caused to suffer severe and permanent injuries and damages, including but not limited to:

a. Advancement of her recurrent breast cancer;

b. Deteriorating health;

c. Diminished life expectancy;

d. Physical and emotional pain and distress;

e. Life-long pain and suffering; and loss of the pleasures of having a normal life;

f. Loss of her best chance at cure and/or multiple alternative treatment possibilities, all of which Mrs. Steadman has been and will, for the rest of her life, be deprived of, all as a result of the defendant's negligence; and

g. Continued endurance of medical treatment and incurrence of medical bills.

WHEREFORE, plaintiff Constance B. Steadman demands judgment in her favor against defendant Patricia R. Nutting, RN/N.P-C, for monetary damages, plus interest and costs.

## COUNT VII – LOSS OF CONSORTIUM
## MICHAEL J. STEADMAN V. JANE/JOHN DOE

93. Plaintiffs repeat and incorporate herein the allegations in paragraphs 1 through 92.

94. As a direct and proximate result of the negligence, carelessness, and lack of skill of defendant Jane/John Doe and the consequent injuries and damages to Constance Steadman, the wife of Michael Steadman, Mr. Steadman has incurred expenses for care and services, has been deprived of the society and companionship of his wife, his comfort and happiness have been impaired, and these deprivations and impairments continue.

WHEREFORE, plaintiff Michael Steadman demands judgment in his favor and against defendant Jane/John Doe for monetary damages, plus interest and costs.

## **JURY DEMAND**

Plaintiffs demand a trial by jury on all issues so triable.

                                                Respectfully submitted,
                                                PLAINTIFFS,
                                                By their Attorneys,

                                                */s/ Ingrid A. Halstrom*

Date: 11/12/20

                                                Frederic N. Halstrom, BBO # 218420
                                                Ingrid A. Halstrom, BBO # 694272
                                                Halstrom Law Offices, PC
                                                P.O. Box 121203 Lafayette Station
                                                Boston, MA  02112-1203
                                                (617) 262-1060
                                                office@halstrom.com
                                                ingrid.halstrom@halstrom.com